E-FILED
Monday, 31 December, 2018 01:38:09 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTICT OF ILLINOIS

| | |
|---|---|
| Dale B. Adams | ) |
| Majestic Publishers | ) |
| *Plaintiffs* | ) |
| *    *    Silent Parties   *    * | ) |
| Clarence D. Adams (DOD: 06/10/2010) | ) |
| Robert S. Adams (DOD: 04/09/2016) | ) |
| Nancy E. Mayberry (DOD: 12/26/2016) | ) |
| v. | ) |
| Champaign County Sheriff's Office | ) |
| Champaign County Sheriff, David J. Madigan | ) |
| Champaign County Sheriff Deputy, Allen Jones | ) |
| Unknown Champaign County Sheriff Deputy Patrol | ) |
| Village of Rantoul, Illinois, Rantoul Police Department | ) |
| Rantoul Police Department Investigator, Larry Zonfrilli | ) |
| Rantoul Police Department Officer, Charles A. Casagrande) | |
| Champaign Police Department Officer, Andrew Deal, et al.) | |
| *Defendants* | ) |

FILED

DEC 31 2018

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

Cause No. 18-CV-2320

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

AND PETITION FOR ADMINISTRATIVE INVESTIGATION

Plaintiff Dale B. Adams and Majestic Publishers Inc., (hereinafter "plaintiff" or "Adams")

brings this action under "*42 U.S. Code Sec. 1983*" against the above captioned defendants.  (LII Staff,

1979). Adams also seeks relief from tortuous acts under pendant jurisdiction and/or the respective

statutory law and Constitutional rights held in the United States and Illinois Constitution. The

defendants have 1) a policy, system or custom of violating statutory law, court orders and their own regulations 2) to cause and deny plaintiff Adams proper jurisdiction, abridging his privileges and immunities to 3) deprive life, liberty and property without due process of law or equal protection of the law causing unlawful and ongoing harm

> LII Staff, (1979), "42 U.S. Code Sec. 1983" LII/Legal Information Institute. Cornell Law School. Publicly available at https://www.law.cornell.edu/uscode/text/42/1983

## I. JURISDICTION AND VENUE

1. Adams grants this Court personal jurisdiction and it has subject matter jurisdiction fully clothed with Constitutional power under "U.S. Const. Art. III., Sec. 2" (Judicial authority) and "U.S. Const. Art. VI., Sec. 2" (Judicial mandate) to review statutes and common law compared to the Constitution "[a]nd Judges in every State shall be bound thereby"

> Henry Campbell Black, M.A., (1979), "Black's Law Dictionary Definitions of the Terms and Phrases of American and English Jurisprudence, Ancient and Modern" West Publishing Co. St. Paul, MN. (Fifth Edition). ISBN 0-8299-2041-2. (1860-1927).

2. Venue is proper under "28 U.S. Code Sec. 1391" as a substantial part of the acts or occurrences happened in the Central District of Illinois within this Court's jurisdiction

> LII Staff. (2018), "28 U.S. Code Sec. 1391" LII/Legal Information Institute. Cornell Law School. Publicly available at https://www.law.cornell.edu/uscode/text/28/1391

## II. PARTIES

3. Plaintiff is Dale B. Adams and Majestic Publishers of the State of Illinois at the time the deprivation of rights began while located at 3213 Greenwood Drive, Dewey, IL. 61840

4. Defendants are Champaign County Sheriff's Office of 204 East Main Street, Urbana, Illinois 61801

5. Defendants are Champaign County Sheriff David J. Madigan official address of 204 E. Main Street, Urbana, IL. 61801 and personal residence of 3253 Greenwood Drive, Dewey, IL. 61840 (rehold.com).

6.  Defendants are Champaign County Sheriff Deputy, Allen Jones and Unknown Champaign County Sheriff Deputy Patrol of 204 E. Main Street, Urbana, IL. 61801

7.  Defendants are Village of Rantoul, Illinois, Rantoul Police Department of 109 East Grove, Rantoul, Illinois, 61866

8.  Defendants are Village of Rantoul, Illinois, Rantoul Police Department and Investigator Larry Zonfrilli of 109 E. Grove Avenue, Rantoul, IL. 61866 with this address at a public directory available at *https://www.village.rantoul.il.us/338/Police-Department*

9.  Defendants are Village of Rantoul, Illinois, Rantoul Police Department, Officer Charles A. Casagrande of 109 E. Grove Avenue, Rantoul, Illinois, 61866

10. Defendants are Champaign City Police, Officer Andrew Deal of 82 E. University Avenue, Champaign, Illinois, 61820

III. PRELIMINARY STATEMENT

11. In the 1980s the Illinois legislature passed a law that high school students will be taught about the United States and Illinois Constitution. Put simply we learned the legislature makes laws, the executive enforces laws, and Article III Judges interpret the law as a fail safe to guard the Constitution. This Separation of Powers with a check and balance was supposed to forever eradicate tyranny and arbitrary punishment. This case shows what we learned is now false

IV. FRAUDULENT CONCEALMENT

12. Plaintiff Adams invokes the doctrine of fraudulent concealment to toll statute of limitations as the defendants may have secretly engaged in a civil conspiracy with themselves and others under color of law, even violating clearly established law to cause Adams and his family a deprivation of rights. The harm began in 1998, yet the defendants have a prolonged open investigation and still fail to obey their own policy and statutes to strip the rights of Adams. With non detention Adams is deprived of knowing how his rights were violated which is bad faith conduct of the defendants to cause harm without a remedy or relief, contrary to norms

V. COMPLAINT

13. Plaintiff Dale B. Adams is a United States citizen born in the State of Illinois and being a citizen of Illinois from beginning in 1964 and a resident during 1988-1990, 1995-2001, entitled to all the protections guaranteed in the United States and Illinois Constitution

14. Plaintiff Adams was a military dependent because his Father, Clarence D. Adams was in the United States Navy and Air Force from 1959-1979, partly as a military security police officer with his DD-214, probably on file in the Champaign County courthouse

15. Since 1979 Clarence D. Adams was friends with Investigator Larry Zonfrilli of the Rantoul Police Department who had been to our home of 1416 Mather Drive, Rantoul, Illinois 61866

16. At all times relevant Adams lived much of his life in Rantoul, Illinois and Chanute AFB in Champaign County, Illinois and the Illinois defendants know plaintiff is non violent

17. In 1995 when Nancy E. Mayberry was going through divorce proceedings she asked her son Dale Adams to move in with her for moral support. Adams and his Mother lived on a lakefront property in Greenwood Acres a rural subdivision with Champaign County Sheriff, David J. Madigan living across the lake at 3253 Greenwood Drive, Dewey, IL. 61840

Rehold Staff, (2018), "3253 Greenwood Drive, Dewey Illinois, 61840" Rehold.com. Retrieved from a public directory available at https://rehold.com/Dewey+IL/Greenwood+DR

18. Defendant Champaign County Sheriff, David J. Madigan and his wife Carol approached our home in their boat about 1996 and greeted Adams knowing who and where Dale Adams was

19. In 1996-2000 Dale Adams was the caregiver for his Great Aunt Mary M. O'Hair while residing at 3213 Greenwood Drive, Dewey, IL. 61840 and during 1998 began writing the book titled, "*My Movie Collection*" with a common law trademark, 10 digit ISBN 0-9677958-0-X

20. In 1997, Nancy E. Mayberry, Robert S. Adams and plaintiff had a computer that came with a reformat disk to delete all information on a computer and revert it back to factory level

21. Our home telephone number was (217) 897-6643 with a separate phone line for Majestic

Publishers of (217) 897-6713 and (217) 897-6765 provided by Illinois Bell Telephone Company owned by AT&T and we had Internet service with a local area connection at PDNT – defunct

22. In 1998, Adams used our computer to chat on social media platforms such as Pow Wow Tribal Voice (type and audio) or ICUII (type, oral and video)(both defunct) allowing citizens to chat with people from other friendly English speaking nations with associative and expressive rights

23. On 1/13/1998, Champaign County Sheriff Deputy, Allen Jones issued traffic citation #18318 to Adams for speeding and Adams plead guilty and paid the fine on 2/24/1998. However, Adams was not aware and did not receive proper notification that the Illinois Secretary of State would suspend Adams' driving privileges for three tickets in a year by counting a traffic ticket from another State (Kentucky) or Adams would have sought court supervision to grant a defensive driving course to remove this ticket from his driving record. Adams was deprived of the privileges and immunities of intrastate and interstate travel by the defendants     [Exhibit 1]

24. On 3/22/1998 the Illinois Secretary of State issued an Order of Revocation of Adams' drivers license     [Exhibit 2]

25. On June 11, 1998, Rantoul Police Department Officer, Charles A. Casagrande detained Adams issuing traffic citation # 63009 for driving on a revoked license. On September 2, 1998, Adams failed to appear in court and a warrant was issued on 9/15/1998 for Adams arrest. Adams was not detained on this warrant until 10/6/1998 within 30 days which is normal     [Exhibit 3]

26. On February 10, 1999, Champaign Police Department officer Andrew Deal stopped Adams issuing traffic citation #237418 for uninsured motor vehicle and # 237419 driving on a revoked license with a notice to appear in court. On 3/22/1999 Adams failed to appear in court and a warrant was issued by Champaign County Circuit Court Judge Michael Q. Jones on March 20, 1999. Adams did not appear in court until February 7, 2000     [Exhibit 4]

27. Somewhere between 1998-2000 Adams received a telephone call from the defendants Village of Rantoul, Illinois, Rantoul Police Department, Investigator Larry Zonfrilli about drug offenses

who stated what time he would drive out to our home to talk to Adams. Due to deep concern

about possible involvement in unlawful conduct, Adams was outside at 3213 Greenwood Drive,

Dewey, IL. 61840 waiting for Larry Zonfrilli. However, although Investigator Larry Zonfrilli

drove 10 miles outside of Rantoul, Illinois, Adams saw Investigator Larry Zonfrilli drive into

our neighborhood and then turned his vehicle around and did not visit Adams       [Exhibit 5]

28. Between 1998-2001, Adams wrote a complaint letter to the defendants Champaign County

    Sheriff's Office seeking legal redress possibly concerning no prior notice of a possible

    suspension of driving privileges and a few days later Adams' Father Clarence D. Adams of 1600

    Pennsylvania Avenue, Apt. D-91, Champaign, Illinois 61821 spoke with plaintiff via telephone

    call stating that a police officer had followed his father "*a long while*" when he was only

    driving 1.8 miles to the Veterans of Foreign Wars (VFW) where my Father socialized and

    consumed alcohol                                                [Exhibit 6]

29. This seemed to be a threat to jail Adams' Father and devastate his fundamental right of interstate

    travel and livelihood with a Drinking While Intoxicated (DWI) offense if Adams pursued legal

    redress, so Adams stopped his petition to protect his Father, displaying how the defendants

    knew who we were, where we lived and what vehicles we drove. Adams alleges the defendants

    violated Adams' First Amendment rights with this abuse of process

30. Although a Champaign County Sheriff Deputy drove by our home of 3213 Greenwood Drive,

    Dewey, Illinois, 61840, witnessing Adams outside in his front yard at least three different days

    during the interim when there was a warrant for Adams arrest from 3/22/1999 through 2/7/2000

    for 11 months, Adams was not detained by these defendants as required by court order, their

    own policy and statutory law

31. Adams alleges the defendants had a custom, system or policy of acting contrary to the Illinois

    Constitution, statutes, common law and their own regulations to cause Adams harm including,

    "*Illinois Constitution Article 5, Section 8. Governor – Supreme Executive Power*

*The Governor shall have the supreme executive power, and shall be responsible for the faithful execution of the laws."*

Illinois General Assembly Staff, (1970), "Illinois Constitution Annotated for Legislators" Fourth Edition. Illinois General Assembly (ILGA). Publicly available at https://www.ilgs.gov/commission/lru?ILConstitution.pdf

32. A Champaign County Job Description Summary of a Deputy Sheriff Patrol shows the deputies were required to, "*Answer calls for assistance from public, reports on crimes committed, patrols an assigned area and apprehends criminals in Champaign County.*"      [Exhibit 7]

Champaign County Staff, (2014), "Champaign County Sheriff's Office Position Descriptions" Champaign County, Illinois. Publicly available at https://www.co.champaign.il.us/Sheriff/SheriffPositionDescriptions.php

33. The Champaign County Job Description Primary Duties and Responsibilities of a Sheriff show defendant Champaign County Sheriff, David J. Madigan and the Unknown Deputy defendants were required to secure warrants [para. 4],      [Exhibit 8]

"*Supervises the issuance of funds to undercover operatives to buy information or contraband. Supervises subordinates in the process required to secure search and bench warrants or arrest offenders in view for trial or examination.*"

Champaign County Staff, (2014), "Champaign County Sheriff's Office Position Descriptions" Champaign County Illinois. Publicly available at https://www.co.champaign.il.us/Sheriff/SheriffPositionDescriptions.php

34. Illinois statutes required all of the defendants to detain Adams yet they all acted unlawfully to cause Adams incalculable harm violating, "*725 ILCS 5/107-16*"

"*Sec. 107-16. Apprehension of offender. It is the duty of every sheriff, coroner, and every marshal, policeman, or other officer of an incorporated city, town, or village, having power of a sheriff, when a criminal offense or breach of the peace is committed or attempted in his or her presence, forthwith to apprehend the offender and bring him or her before a judge, to be dealt with according to law; to suppress riots and unlawful assemblies, and to keep the peace, and without delay to serve and execute all warrants and other process to him or her lawfully directed. (Source P.A. 89-234, eff. 1-1-96.)*"

Illinois General Assembly Staff, (January 1, 1996), "Sec. 107-16. Apprehension of offender" Illinois General Assembly (Ilga). Publicly available at https://www.ilga.gov/legislation /ilcs/ilcs4.asp?ActID=1966&SeqStart=10300000&SeqEnd=11900000

35. Even though Adams had a warrant for his arrest from March 22, 1999 until February 7, 2000,

while driving in the town of Rantoul, Illinois the defendants of the Rantoul Police Department did not search or seize Adams as required by law. In after thought after each law enforcement agency pulled Adams over, Adams was never stopped by these same agencies again as if a civil conspiracy existed to deprive Adams of privileges and immunities of U.S. Const. Amend XIV., which Adams did not realize until he obtained these records on November 29, 2018

36. However the defendants did arrest an African American friend named Michael Steele of 1421 Mather Drive, Rantoul, Illinois 61866 showing disparate and unequal treatment even though Adams may have been caught up in the investigation, conflicting with U.S. Const. Amend XIV.,

37. Since the warrant from March 22, 1999, was not honored by the defendants, in November 1999, seven months later, Adams flew to Australia to meet this female never suspecting the defendants acting jointly had compromised our communications interfering with our lives (foreign affairs).

38. On December 9, 1999, Adams bought a block of 10 International Standard Book Numbers (ISBNs) from Bowkers according to Rhonda McKendrick, Content Data Analyst, Content Operations-Publishers Authority Database of ProQuest, 630 Central Avenue, New Providence, NJ. 07974 of Tel: (908) 795-3584 at email: Rhonda.McKendrick@proquest.com

Bowker Staff, (1999), "ISBN US" Thorpe-Bowker, a ProQuest affiliate. Publicly available at https://www.bowker.com/products/ISBN-US.html

39. Dale Adams of Majestic Publishers 10 digit ISBNs were converted to 13 digits noted below

| | | |
|---|---|---|
| 978-0-9677958-8-1 | 978-0-9677958-0-5 | 978-0-9677958-1-2 |
| 978-0-9677958-2-9 | 978-0-9677958-2-6 | 978-0-9677958-4-3 |
| 978-0-9677958-5-0 | 978-0-9677958-6-7 | 978-0-9677958-7-4 |
| 978-0-9677958-9-8 | | |

40. Adams bought a computer security program for them both and mailed the second copy of this program to the female in Australia because the computer hacking was night and day. The United States Department of Justice filed a civil action against this computer security company which guaranteed their computer security program for life and it went defunct about 2009

41. In 1999 to get relief from the computer hacking Dale Adams called the Illinois State Police,

Computer Crimes Division and a kind female agent of the Federal Bureau of Investigation

(FBI) in Illinois seeking relief from the hacking displaying "[a]*n actual subjective expectation*

*of privacy*" because wiretapping or eavesdropping was a violation of law satisfying the first

prong of a Fourth Amendment violation under "*Michael Lee Smith v. State of Maryland*, 442

U.S. 735 (99 S. Ct. 2577, 61 L. Ed. 2d 220)"

LII Staff, (June 20, 1979), "Michael Lee Smith v. State of Maryland, 442 U.S. 735 (99 S. Ct. 2577,
61 L. Ed. 2d 220)" LII/Legal Information Institute. Cornell Law School. Publicly available at
https://www.law.cornell.edu/supremecourt/text/442/735

42. In 1999, Adams began taking notes to write a book to help future caregivers that wasn't

completed until 2006 as, "*Care Giving Made Easy-How to be an Awesome Caregiver*"

43. On January 20, 1999, Adams had a contract with Darlene Bishop of *http://www.writebusiness.*

*com* to edit the book, "*My Movie Collection*" and she now has a new website address

44. On February 7, 2000 Adams registered the business name Majestic Publishers with the

Champaign County, Illinois Clerk                                           [Exhibit 9]

45. Adams had a separate room for his business of Majestic Publishers with an 800 telephone

number provided by a local secretary service and a United States Postal Service (USPS) address

of P.O. Box 98. Dewey, IL. 61840

46. In 2000, Adams received a federal tax Employment Identification Number (EIN) 36-4355235

for Majestic Publishers via telephone call to the Internal Revenue Service (IRS) and any

eavesdropping of Adams telephone calls revealed these protected interests

47. Due to the severe computer hacking Adams had to reformat our computer over 50 times which

displays aggressive force with the amount of harm and loss of property. Adams was a computer

novice going into system devices trying to stop the hacking and many times caused a critical

error that required reformatting the computer. Adams had no evidence on his computer of

unlawful conduct and was not intentionally deleting evidence to create an exigent circumstance

and certainly never gave his consent to anybody to violate our rights to privacy

48. In 2000, Adams was so distraught by the hacking that he had his friend Tom Zindars, Krafft Foods Construction Manager of 1701 W. Bradley Avenue, Champaign, IL. 61821 of T: (217) 378-1900 to drive Adams to a computer repair shop in Champaign, Illinois to exchange this premium computer for a more common brand and still has this computer

49. Adams maintained that he had a fundamental right to love, but had to end this relationship due to excessive hacking which the government seems to refer to as "*physical search*." (FAS Staff, 1994). Adams remembers the pain from ending that relationship was deep for 7 weeks and the defendants appear to have been jointly involved with themselves and others using a system to control Adams' associations and expressions with a prior restraint of free speech

50. It seems the defendants jointly discriminated against Adams for having a relationship with a criminal record and altered Adams' life based on their personal judgments – instead of the law

51. In 2017, Adams discovered evidence the federal government engaged in wrongful conduct with the Thin Thread electronic surveillance program in 1999, although it was not approved by the Attorney General. It then dawned on Adams that had the Illinois defendants complied with the law and detained Adams in 1998 and 1999 the federal government may not have been able to connect Dale Adams under the "*foreign affairs*" exception which causes Adams extreme harm

52. Adams alleges his First Amendment activities on the Internet should not have allowed the government to label Adams as a foreign power or agent of a foreign power as congress intended to prevent this problem under "*50 U.S. Code Sec. 1805(a)(3)(A) the target of the electronic surveillance is a foreign power or an agent of a foreign power: Provided, That no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States ...*"

Superintendent of Documents GPO Staff, (October 25, 1978), "The Foreign Intelligence Surveillance Act of 1978, Pub. L. 95-511, 92 Stat. 1783 (FISA)" The United States House of Representatives. Certified by Superintendent of Documents <pkisupport@gpo.gov> United States Government Printing Office, certificate issued by VeriSign CA for Adobe CDS. Publicly available at https://www.gpo.gov/fdsys/granule/STATUTE-92/STATUTE-92-Pg1783/content-

detail.html

53. The female Australian was an artist that painted as we communicated by audio and video and she also did the illustrations for the book, "*My Movie Collection*" and we spoke of matters related to government so our creative expressions were protected under the First Amendment and possibly by intellectual property laws

54. Defendants system of not complying with statutes, common law and Constitutional prohibitions using a non detention policy has endangered Adams with torture and indefinite detention under the Authorization for Use of Military Force of 2001, where the executive can punish, torture and kill innocent people as the Court has no jurisdiction to correct a legal wrong until it is too late, exceeding the concrete definitions of standing, ripeness and damages

55. Adams can provide the Court evidence that seems to be threats to waive First Amendment rights of owning Majestic Publishers so the State of Arkansas can secure a guaranteed conviction of Adams without First Amendment rights or defense of owning Majestic Publishers or face military detention including from a federal agency on 11/9/2018

56. Then in 2018, Adams found a congressional report titled, "*Amending the Foreign Intelligence Surveillance Act*" (1994) which revealed a large system of non detention implicating the defendants were jointly involved to harm Adams maybe even before 1998 (FAS Staff, 1994).

57. On July 14, 1994, United States Department of Justice, United States Deputy Attorney General, Jamies S. Gorelick testified before the United States House of Representatives, Permanent Select Committee on Intelligence stating that the federal government does not charge and detain, "*many many many*" of these victims with criminal penalties as they have "*other ways*" to protect the interests of the United States which includes hacking [p 68]. (FAS Staff, 1994).

58. Even more alarming United States Deputy Attorney General, Jamie S. Gorelick responded "yes" to the question below from Chairman Dan Glickman [p 67]. (FAS Staff, 1994).

    "*The Chairman. The only difference is you do not have an independent member of the judiciary*

*signing the warrant? It is done by the Attorney General herself?"*

*"Ms. Gorelick. Yes ..."*

FAS Staff, (July 14, 1994), "Amending the Foreign Intelligence Surveillance Act" Hearing Before the Permanent Select Committee on Intelligence. The United States House of Representatives. The Federation of American Scientists (FAS). Recently made available to the search engines for Adams at https://www.fas.org/irp/congress/1994_hr/fisa-amend.pdf

59. Although Adams searched the Internet for the above cited document for weeks, Adams' search ability on the Internet seems to be obstructed by public and private parties

60. The federal government is obviously mislabeling many people as a danger to our nation even abusing their powers to abridge First Amendment rights of the press or political speech with hacking, which is a violation of black letter law … and a serious threat to our democracy

61. Dale Adams grew up on the same block as Champaign County Sheriff Deputy, Allen Jones and he knows Adams is non violent as his Father was a Rantoul Police Officer

62. Rantoul Police Department Investigator, Larry Zonfrilli and Champaign County Sheriff, David J. Madigan also knew Adams was non violent and should have questioned the federal governments' claims instead of willingly harming Adams without proper communication

63. Adams' Father Clarence D. Adams was a retired Master sergeant with an honorable discharge becoming disabled with cancer from agent orange due to voluntary service in the Vietnam War and there is some evidence that the government was even alleging Adams' Father as a threat to our nation, which displays how reckless authorities are with making unfounded designations

64. The website of the United States Department of Justice, "*Law Enforcement Affairs*" policy describes a communication system with, "[s]*tate, local, tribal and territorial law enforcement organizations …*" so the defendants did have an opportunity to express their opinions and apparently did not represent Adams' Fourteenth Amendment rights for due process and fairness,

*"[L]aw Enforcement Affairs is one of the leadership support offices within the U.S. Department of Justice and operated out of the Office of the Deputy Attorney General. Law Enforcement Affairs represents the Department's leadership by communicating and liaising with major federal, state, local, tribal and territorial law enforcement organizations..."*

DOJ Staff, (May 3, 2018), "About DOJ" The United States Department of Justice (DOJ). Publicly available at https://www.justice.gov/about

65. Since 1988 Adams has been indoctrinated in Judeo-Christian ethics with a firm belief to preserve the value of human life and that is why Adams has dedicated much of his life caring for the elderly or less fortunate and somebody has made an incontestable erroneous decision

66. Since Adams' driving privileges were revoked, Nancy Mayberry, Robert Adams and plaintiff left the State of Illinois in 2001, never suspecting that Illinois authorities were jointly conspiring to systematically invade our privacy, deprive our rights and alter our lives

67. The United States Attorney General complied with annual Congressional reporting requirements under the "*Electronic Communications Privacy Act of 1986, 18 U.S. Code Sec. 2519 – Reports concerning intercepted wire, oral, or electronic communications*" from 1986 – 1999, until Adams' privacy was violated in 1999, and then no reports were made until 2004

LII Staff, (1986), "18 U.S. Code Sec. 2519 – Reports concerning intercepted wire, oral, or electronic communications" LII/Legal Information Institute. Cornell Law School. Publicly available at https://www.law.cornell.edu/uscode/text/18/2519

68. In 2004, Congress enacted the "*Intelligence Reform and Terrorism Prevention Act of 2004*" which mandated State, county and local governments share and conceal information with extraterritorial jurisdiction and "*18 U.S. Code Sec. 6603(C)(2)*" appears to be a violation of the Ex Post Facto and Bill of Attainder Clause as it may have been formed to harm Adams after the fact using definitions from 1988-89, although common law during that time held statutes do not extend past our borders

"*(C) Addition to Offense of Providing Material Support to Terrorist Organizations Sec. 2339B(a)(1) of Title 18, United States Code is amended-*
*(1) by striking, "within the United States or subject to the jurisdiction of the United States; and (2) by adding at the end the following, "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection(g)(6), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989) ...*" (emphasis added).

NCTC Staff, (2004), "Intelligence Reform and Terrorism Prevention Act of 2004" The National Counter Terrorism Center. United States Senator Susan Collins. Retrieved on 10/15/2012 from http://www.nctc.gov/docs/p1108_458.pdf

69.  Plaintiff Adams has been harmed by the defendants and is entitled to relief as a matter of law and equity

## VI. JURY TRIAL

70. Plaintiff Adams asserts there is only one form of government which requires a jury trial by right and defendants' claim to have a parallel government where no jury or rule of law exists is unjust

## VII. CAUSE OF ACTION

*First Cause of Action*

### First Amendment Violation

71. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with the First Amendment provisions in the United States Constitution, Amend I., and "*Illinois Constitution Art. 1., Sec. 1. Inherent ... rights*" ... "*pursuit of happiness*" of operating Majestic Publishers, "*Sec. 3. Religious Freedom*" to procreate, "*Sec. 4. Freedom of Speech*" and, "*Sec. 5. Right to ... Petition*" with pendant jurisdiction (Ilga, 1970).

72. The defendants acting individually and collectively in their official and personal capacity under color of law to deprive Adams of privileges and immunities had a custom, system or policy of, 1) a prior restraint to free speech with censorship and punishment for associative and expressive rights contrary to "*Cox v. Louisiana*, 379 U.S. 536 (1965)" (LII Staff, 1965).

> "*[T]hat is why freedom of speech ... is ... protected against censorship and punishment ... There is no room under our Constitution for a more restrictive view ...*"
> "*[A] statute which, upon its face and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment ...*"
> "*[I]t is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination ...*"

LII Staff, (Jan. 18, 1965), "Cox v. Louisiana, 379 U.S. 536 (1965)" LII/Legal Information Institute. Cornell Law School. Publicly available at https://www.law.cornell.edu/

supremecourt/text/379/536

2) limiting or forbidding associative and expressive rights including the fundamental right to love or delaying Majestic Publishers publication of books depriving Adams of life, liberty and the pursuit of happiness with no ability for a hearing conflicts with "*New York Times Co. v. United States*, 403 U.S. 713 (1971)" (LII Staff, 1971).

"*[A]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963); see also Near v. Minnesota, 238 U.S. 697 (1931). The Government "thus carries a heavy burden of showing justification for the imposition of such a restraint." Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971) ...*"

LII Staff, (1971), "New York Times Co. v. United States, 403 U.S. 713 (1971)" Cornell Law School. LII/Legal Information Institute. Publicly available at https://www.law.cornell.edu/supremecourt/text/403/713

3) arbitrarily causing, interfering with or controlling Adams' relationships, business affairs adversely affecting or altering plaintiff's life contrary to long standing law in "*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)" (LII Staff, 1886).

"*[i]n the famous language of the Massachusetts Bill of Rights, the government of the commonwealth "may be a government of laws, and not of men,: For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life at the mere will of another seems to be intolerable in any country where freedom prevails, as the essence of slavery itself ...*"

LII Staff, (May 10, 1886), "Yick Wo v. Hopkins, 118 U.S. 356 (1886)" LII/Legal Information Institute. Cornell Law School. Publicly available at https://www.law.cornell.edu/supremecourt/text/118/356

4) retaliation for expressing First Amendment rights with threats of criminal punishment or military detention to Adams or his family for expressions of political speech noting possible government wrongdoing conflicts with well-settled common law including, "*New York Times v. Sullivan*, 376 U.S. 254 (1964)" (LII Staff, 1964).

"*[f]ree political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our Constitutional system ...*"

LII Staff, (March 9, 1964), "New York Times v. Sullivan, 376 U.S. 254 (1964)" LII/Legal

Information Institute. Cornell Law School. Publicly available at
https://www.law.cornell.edu/supremecourt/text/376/254

73. Defendants' conduct of causing, controlling and arbitrarily altering Adams' life, dreams or the

business of Majestic Publishers in the deprivation of privileges, immunities, fundamental and

First Amendment rights based on their personal opinions instead of the law conflicts with the

above noted common law and Constitutional prohibitions where Adams is entitled to a remedy

and relief as a matter of law

*Second Cause of Action*

**Fourth Amendment Violation**

74. Plaintiffs re-allege the defendants' conduct herein conflicts with U. S. Constitution Amend. IV.,

and "*Illinois Const. Art. 1, Sec. 6. Searches, Seizures, Privacy and Interceptions*" with pendant

jurisdiction  (Ilga, 1970).

75. The defendants acting individually and collectively in their official and personal capacity under

color of law to deprive Adams of privileges and immunities had a custom, system or policy of;

1) using faulty general warrants by misrepresenting facts, with no particularity not even signed

by an unbiased judge for the physical search and seizure of Adams' house, papers, computer,

intellectual property and effects conflicts with U.S. Const. Amend. IV., and "Illinois Const. Art.

1 Sec. 6" (Ilga, 1970)., along with common law held in "*Mapp v. Ohio*, 367 U.S. 643 (1961)"

(LII Staff, 1961)., and "[a]*re per se unreasonable under the Fourth Amendment* ..." as per

"*Daniel Ellsberg et al. v. John Mitchell, et al.*, (Ellsberg I), 709 F. 2d 51, 52-56, (D.C. Cir.

1983)" (OpenJurist, 1983).,

"[L]*ess than 30 years after Boyd, this Court, in Weeks v. United States, 232 U.S. 383 (1914),
stated that the Fourth Amendment ... put the courts of the United States and Federal officials,
in the exercise of their power and authority, under limitations and restraints [and] ... forever
secure[d] the people, their persons, houses, papers and effects against all unreasonable
searches and seizures under the guise of law ..., and the duty of giving to it force and effect is
obligatory upon all entrusted under our Federal system with the enforcement of the laws ...*"

LII Staff, (June 19, 1961), "Mapp v. Ohio, 367 U.S. 643 (1961)" LII/Legal Information Institute.

Cornell Law School. Publicly available from
https://www.law.cornell.edu/supremecourt/text/367/643

Open Jurist Staff, (June 7, 1983), "Daniel Ellsberg, et al. v. John N. Mitchell, et al, (Ellsberg I),
709 F. 2d 51, 52-56, (D.C. Cir. 1983)" OpenJurist. OpenJurist.org. United States Court of
Appeals for the District of Columbia, Circuit Judge Harry T. Edwards. Publicly available at
https://openjurist.org/709/f2d/51

2) engaging in warrantless electronic surveillance with unlawful search and seizures of Adams'

house, papers, computer and effects with just the signature of the Attorney General conflicts

with "*United States v. United States District Court for the Eastern District of Michigan*, 407

U.S. 297, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972), "*[S]ection 2511(3) is merely a disclaimed of*

*congressional intent to define presidential powers in matters affecting national security, and is*

*not a grant of authority to conduct warrantless national security surveillances...*" (LII Staff,

1972)., and "*Katz v. United States*, 389 U.S. 347 (1967) (Justice Douglass concurring)" …

"*[N]either the President nor the Attorney General is a magistrate. In matters where they*
*believe national security may be involved, they are not detached, disinterested, and neutral as a*
*court or magistrate must be ...*"

"*[T]he electronic surveillance used by the Government was represented to me on oral argument*
*as being in the 'foreign' field. No warrant, as required by the Fourth Amendment and by our*
*decisions, was obtained, only the authorization by the Attorney General. Such authorization*
*was held insufficient in our recent decision in United States v. United States District Court ...*"

LII Staff, (July 29, 1972), "Anthony Joseph RUSSO, Jr., and Daniel Ellsberg, Applicants, v.
William Matthew BYRNE, Jr., Judge of the United States District Court for the Central District
of California. No. A-150, 409 U.S. 1219 (93 S. Ct. 21, 34 L. Ed. 2d 30)" LII/Legal Information
Institute. Cornell Law School. Publicly available at
https://www.law.cornell.edu/supremecourt/text/409/1219

LII Staff, (Dec. 18, 1967), "Kazt v. United States, 389 U.S. 347 (1967)" Cornell Law School.
LII/Legal Information Institute. Publicly available at
https://www.law.cornell.edu/supremecourt/text/389/347

LII Staff, (June 19, 1972), "United States v. United States District Court for the Eastern District of
Michigan, 407 U.S. 297 (1972)" LII/Legal Information Institute. Cornell Law School. Publicly
available at https://www.law.cornell.edu/supremecourt/text/407/297

3) engaging in an unreasonably prolonged investigation for 2, possibly 3 decades even violating

Illinois statutes, Constitutional prohibitions and their own policy to allow unlawful conduct

with a failure to detain Adams as they interfere with or intercept oral or electronic communications to search and seize plaintiff's house, papers, computer, intellectual property and effects may conflict with *"United States v. Jacobsen, 466 U.S. 109, 124 (1984)"* *"[I]t is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes on interests protected by the Constitution ..."* and *"People v. Cox, 202 Ill. 2d 462, 782 N.E. 2d 275 (2002)"* ... *"[A] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. In an earlier case involving a dog sniff that occurred during an unreasonably prolonged traffic stop, the Illinois Supreme Court held that use of the dog and the subsequent discovery of contraband were the product of an unconstitutional seizure ..."* [p 2] (LII Staff, 2005).

LII Staff, (Jan. 24, 2005), "United States v. Roy I. Caballes, 543 U.S. ___ (2005)" Cornell Law School. LII/Legal Information Institute. Publicly available at https://www.law.cornell.edu/supct/pdf/03-923P.ZO

76. Defendants' conduct of causing, controlling and arbitrarily altering Adams' life, dreams and business image of Majestic Publishers in the deprivation of privileges, immunities, fundamental and Fourth Amendment rights with an unreasonably prolonged investigation to search and seize plaintiff Adams and Majestic Publishers' house, papers, computer, intellectual property and effects may conflict with the above cited common law and Constitutional prohibitions where plaintiffs are entitled to a remedy and relief as a matter of law

*Third Cause of Action*

**Fifth Amendment Violation**

77. Plaintiffs re-allege the defendants' conduct herein conflicts with U.S. Constitution, Amend. V., and *"Illinois Const., Art. 1, Sec. 2. Due Process and Equal Protection"* *"Sec. 7. Indictment and Preliminary Hearing"* *"Sec. 8. Rights After Indictment"* *"Sec. 9. Bail and Habeas Corpus"* and

*"Sec. 10. Self-Incrimination and Double Jeopardy"* with pendant jurisdiction (Ilga, 1970).

78. The defendants acting individually and collectively in their official and personal capacity under

color of law to deprive plaintiffs Adams and Majestic Publishers of privileges and immunities

have a custom, system or policy of;

1) denying plaintiff Adams and Majestic Publishers basic tenets of the Due Process clause

including the right to be heard to answer the allegation may conflict with common law held in

*"Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurther, J., concurring),

*"The fundamental requirement of due process is the opportunity to be heard "at a meaningful*

*time and in a meaningful manner ... ""* (LII Staff, 1967).

LII Staff, (Feb. 24, 1967), "Mathews v. Eldridge, 424 U.S. 319 (1976)" LII/Legal Information
Institute. Cornell Law School. Publicly available at
https://www.law.cornell.edu/supremecourt/text/424/319

2) breach of duty with law violations to arbitrarily deny Adams equal treatment under the law as

they arrested the African American, Michael Steele of 1421 Mather Drive, Rantoul, Illinois,

61866 and gave him a jury trial but they would not detain Adams as a Caucasian although

Adams was partly in the investigation. The defendants jointly participated in allowing

wrongful government conduct by failure to detain Adams to prevent a legal challenge about the

unreasonable government interference in Adams' business of Majestic Publishers without

providing Adams a hearing contrary to *Near v. Minnesota*, 283 U.S. 697 (1931), *"[A] statute*

*authorizing such proceedings in restraint of publication is inconsistent with the conception of*

*liberty of the press as historically conceived and guaranteed ..."* (LII Staff, 1931).

LII Staff, (Feb. 24, 1976), "Near v. Minnesota, 283 U.S. 697 (1931)" LII/Legal Information
Institute. Cornell Law School. Publicly available at
https://www.law.cornell.edu/supremecourt/text/283/697

*"[B]ecause the censor's business is to censor, there inheres the danger that he may well be less*
*responsive than a court - part of an independent branch of government – to the constitutionally*
*protected interests in free expression ..."* (LII Staff, 1965).

LII Staff, (1965), "Ronald L. Freedman v. State of Maryland, 380 U.S. 51 (85 S. Ct. 734, 13 L. Ed.

2d 649 (1965)" LII/Legal Information Institute. Cornell Law School. Publicly available at https://www.law.cornell.edu/supremecourt/text/380/51

3) giving Adams non proportional indefinite punishment without a hearing to establish the facts and law at the time of the alleged offense and obtaining written, oral, video and electronic surveillance of Adams for 20-30 years with evidence to compel Adams to testify against himself conflicts with U.S. Const. Amend. V. The government uses this evidence to extort victims with an UnConstitutional condition according to their own personal opinions which can be wrong

79. Defendants' conduct of causing, controlling and arbitrarily altering Adams' life, dreams and business affairs of Majestic Publishers in the deprivation of privileges, immunities, fundamental and Fifth Amendment rights of fairness by harming Adams on behalf of the federal government without proper communication to ensure full compliance with the substantive and procedural requirements of law as it is understood in the State of Illinois may conflict with the common law and Constitutional prohibitions entitling Adams to a remedy and relief as a matter of law

*Fourth Cause of Action*

**Ninth Amendment Violation**

80. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with U.S. Const. Amend. IX., and contrary to "*Olmstead v. United States*, 277 U.S. 438 (1928) (J. Brandies dissenting)" (LII Staff, 1928).

81. The defendants acting individually and collectively in their official and personal capacity under color of law to deprive plaintiffs Adams and Majestic Publishers of privileges and immunities had a custom, system or policy of;

1) ignoring their own laws to aid the federal government to violate Illinois and federal statutes, abridge international laws regarding human rights, treaties (Geneva Conventions), well-accepted fundamental rights or abridge Adams' Constitutional rights as they are understood and protected in Illinois, apparently under the authority enumerated in "U.S. Const. Art. VI., Sec

[2]" (Black's Law Dictionary, 1979). After enduring 2 decades of this uncheckable power

Adams can testify as to the indomitable pain and suffering it entails and why it should be held

as a violation of the Ninth Amendment (Black's Law Dictionary, 1979).

*"[2]    This Constitution, and the Laws of the United States which shall be made in Pursuance
thereof; and all Treaties made, or which shall be made under the Authority of the United States,
shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby,
any Thing in the Constitution or Laws of any State to the Contrary not-withstanding."*

By plaintiff's reading this clause requires both the federal and State governments to comply with

the Constitution and all their laws shall be inferior to the Constitution. Thus the defendants

breached their authority by construing the defendants and other parties can lawfully deny

Adams well-settled Constitutional and fundamental rights - even by violating the law. Adams

alleges this custom, system or policy conflicts with the Ninth Amendment,

*"AMENDMENT IX   [1791]"*
*"The enumeration in the Constitution, of certain rights, shall not be construed to deny or
disparage others retained by the people."*

Henry, Campbell, Black, (1979), Black's Law Dictionary Definitions of the Terms and Phrases of
   American and English Jurisprudence, Ancient and Modern" West Publishing Company.
   St. Paul, MN. (Fifth Edition). ISBN 0-8299-2041-2.

*"[T]o declare that, in the administration of the criminal law, the end justifies the means - - to
declare that the Government may commit crimes in order to secure the conviction of a private
criminal - - would bring terrible retribution. Against that pernicious doctrine the Court should
resolutely set its face ..."*

LII Staff, (1928), "Olmstead v. United States, 277 U.S. 438 (1928)" LII/Legal Information
   Institute. Cornell Law School. Publicly available from
   https://www.law.cornell.edu/supremecourt/text/277/438

82. Defendants' conduct of causing, controlling and altering plaintiffs' life, dreams and business

affairs of Majestic Publishers in the deprivation of privileges, immunities, fundamental and

Ninth Amendment rights by misconstruing they have power to act outside their scope of legal

authority to violate criminal laws or Constitutional prohibitions with a use any mean necessary

approach to ensnare alleged criminals or people they arbitrarily deem as a danger to our nation

with an ironclad criminal conviction is eroding our Republic and the spirit of our nation. The

defendants' conduct to show willful blindness or to assist anyone in violating the law as that term is understood in Illinois conflicts with the above cited common law and Constitutional prohibitions and plaintiffs' are entitled to a remedy and relief as a matter of law

*Fifth Cause of Action*

**Third Amendment Violation**

83. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with "U.S. Const. Amend. III.", "*[N]o soldier shall in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law*" (Black's Law Dictionary, 1979).

84. The defendants acting individually and collectively in their official and personal capacity under color of law to deprive Adams and Majestic Publishers of privileges and immunities had a custom, system or policy of;

1) allowed or showed willful blindness to military authorities engaging in warrantless electronic surveillance or physical search of our home which may have required a soldier to enter our home without our consent to install these oral or video surveillance devices so they could be "*quartered*" in our house 24/7 during our most intimate moments which any normal and prudent person would find offensive

85. Defendants' conduct of causing, controlling and arbitrarily altering Adams' life, dreams and business affairs of Majestic Publishers with the deprivation of privileges, immunities, fundamental and Third Amendment rights to be free from invasive military voyeurism into the private lives in our home may conflict with the above cited common law and Constitutional prohibitions offering plaintiffs a remedy and relief as a matter of law

*Sixth Cause of Action*

**Fourteenth Amendment Violation**

86. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with "U.S. Const.

Amend. XIV. Sec.[1]" (Black's Law Dictionary, 1979).

87. The defendants acting individually and collectively in their official and personal capacity under color of law to deprive Adams and Majestic Publishers of privileges and immunities had a custom, system or policy of;

1) denying plaintiffs proper jurisdiction in the State of Illinois to face any allegations of unlawful conduct ignoring the proud traditions, heritage and the State sovereignty of Illinois to uphold the rule of law equally to all people. As a result plaintiffs are stuck in a perpetual extraterritorial investigation under retroactive laws, by other States, nations, military and federal authorities that can only end with a guaranteed ironclad conviction and with no rightful First Amendment defense offers a remedy under U.S. Const. Amend. XIV.,

*"[f]orbids the making or enforcement of any law abridging the privileges and immunities of citizens of the United States; and secures all "persons" against any state action which results in either deprivation of life, liberty, or property without due process of law, or, in denial of the equal protection of the laws ..."*

Henry, Campbell, Black, M.A., (1979), "Black's Law Dictionary Definitions of the Terms and Phrases of American and English Jurisprudence, Ancient and Modern" West Publishing Co. St. Paul, MN. ISBN 0-8299-2041-2. (Fifth Edition).

88. Defendants' conduct of causing, controlling and altering Adams' life, dreams and business affairs of Majestic Publishers with the deprivation of privileges, immunities, fundamental and Fourteenth Amendment rights offers Adams a remedy and relief as a matter of law

*Seventh Cause of Action*

**Sixth Amendment Violation**

89. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with U.S. Const, Amend, VI., as those rights are understood in Illinois law (Black's Law Dictionary, 1979).

90. The defendants acting individually and collectively in their official and personal capacity under color of law to deprive Adams of privileges and immunities have a custom, system or policy of;

1) knowingly denying Adams every provision of the Sixth Amendment including a speedy and

public trial, an unbiased jury, not charged with a crime in Champaign County, Illinois where

Majestic Publishers exists, to be informed of the allegations, to have or to question witnesses

(many now deceased) and denied the assistance of legal counsel making it impossible for

Adams to ever have a fair trial in any jurisdiction causing irreparable harm,

> *Based on the Court's finding of fact, application of the legal standard, and in consideration of the State's disregard for procedural due process and the rule of law, this Court concludes that dismissal of the Indictment is necessary to remedy the State's intentional violation of Defendants Sixth Amendment rights ...*"

Judge Andres L. Rocanelli, (May 1, 2018), "State of Delaware v. Jacquez Robinson, 2018 Del. Super. Lexis 185 (May 1, 2018)" The Superior Court of the State of Delaware. Publicly available from https://courts.delaware.gov/Opinions/Download.aspx?id=272330

91. Defendants' conduct of causing, controlling and arbitrarily altering Adams' life, dreams and

business affairs of Majestic Publishers in the deprivation of privileges immunities, fundamental

and Sixth Amendment rights as understood in Illinois may conflict with common law or

Constitutional prohibitions noted above offering plaintiffs a remedy and relief as a matter of law

*Eighth Cause of Action*

**Separation of Powers Violation**

92. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with common law and

the intent of our Founders requiring a separation of powers in our Constitution

93. The defendants acting individually and collectively in their official and personal capacity under

color of law to deprive Adams of privileges and immunities had a custom, system or policy of;

1) usurping power from the other branches of federalism with non-detention to deprive Adams

of a fair trial with a jury of his peers ascertaining the facts and the law established during that

time frame as articulated by our wise Founders in "*Federalist Paper No. 51*" (Madison, 1788).

> "*The Structure of the Government Must Furnish the Proper Checks and Balances Between the Different Departments*"
> "[*T*]*his policy of supplying, by opposite and rival interests, the defect of better motives, might be traced through the whole system of human affairs, private as well as public. We see it particularly displayed in all the subordinate distributions of power, where the constant aim is to divide and arrange the several offices in such a manner as that each may be a check on the*

*other that the private interest of every individual may be the sentinel over the public rights. These inventions of prudence cannot be less requisite in the distribution of the supreme powers of the States ..."*

Madison, James and/or Hamilton, Alexander, (February 8, 1788), "Federalist Papers No. 51, The Structure of the Government Must Furnish the Proper Checks and Balances Between the Different Departments" [p 151].  (Public Domain).

94. Defendants' conduct of causing, controlling or arbitrarily altering Adams' life, dreams and business affairs of Majestic Publishers with the deprivation of privileges, immunities, fundamental and Constitutional rights as intended by our Founders with a separation of powers may conflict with common law offering plaintiffs a remedy and relief as a matter of law

*Ninth Cause of Action*

**Tort of Abuse of Process**

95. Plaintiffs re-allege the defendants' conduct enumerated herein displays abuse of process reviewed under pendant jurisdiction

96. The defendants acting individually and collectively in their official and personal capacity under color of law to deprive Adams of privileges and immunities had a custom, system or policy of;

1) failing to comply with their job duties and responsibilities of law enforcement by violating *"725 ILCS 5/107-16 Apprehension of offender"* (Ilgs, 1996). Defendants ignored a warrant for plaintiff Adams on March 30, 1999, with an abuse of process failing to uphold statutory law, court orders, common law, their own regulations and the respective Constitutions for almost a year. This conscious decision of the defendants to delay detention with an unreasonably long investigation to increase the harm to plaintiffs for ulterior motives was in bad faith conspiring with other parties to conceal wrongful conduct

2) extorting Adams' Father Clarence D. Adams with criminal penalties of a (DWI) offense to abridge Adams' First Amendment rights to petition the government for a redress of grievances. Using criminal laws for the specific purpose to defeat First Amendment rights is a violation of well-settled law and an abuse of process

"[T]he only elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive, and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. Holiday Magic, Inc. v. Scott, 4 Ill. App. 3d 962. 966 (1972) ..." (Justice Byrne, 2004).

Justice Byrne, (2004), "Shalabh Kumar v. Deborah H. Bornstein and Gardner Carton and Douglas, Case No. 2-04-0134" The Appellate Court of Illinois, Second District. Publicly available at https://www.illinoiscourts.gov/Opinions/AppellateCourt/2004/2ndDistrict/December/Html/ 2040134.htm

*Tenth Cause of Action*

**Tort of Intrusion and Invasion of Privacy**

97. Plaintiffs re-allege the defendants' conduct enumerated herein conflicts with the Tort of

Intrusion and Invasion of Privacy as the term is understood in Illinois under pendant jurisdiction

98. The defendants acting individually and collectively in their official and personal capacity under

color of law to deprive Adams and Majestic Publishers of privileges and immunities had a

custom, system or policy of;

1) failure to equally uphold statutory law and Constitutional rights allowing plaintiffs' Fourth

Amendment rights to be invaded raises a right to relief as "1) *there was an unauthorized*

*intrusion or prying into the plaintiffs" seclusion ..."* by hacking into our family computer night

and day; *"2) the intrusion was offensive or objectionable to a reasonable person ..."* causing

Adams to reformat his computer over 50 times and having to call State and federal law

enforcement for help; "*3) the matter upon which the intrusion occurred was private* ..." because

Adams had intimate and confidential relationships on the Internet which were not obscene; and

"*4) the intrusion caused anguish and suffering* ..." as plaintiff Adams suffered seven (7) weeks

of emotional anguish from this loss caused by excessive government hacking adversely

affecting Adams' life, Majestic Publishers business interests with the loss to pursuit of happiness

satisfying the hurdles held in, "*Melvin v. Burling, 490 N.E. 2d 1011, 1013 (3d Dist. 1986)*"

O'Brien, R., Mattson E., and Healy, B., (May 4, 2018), "Chapter 12: Right to Privacy – Illinois State Bar Association Media Law Handbook" Publicly available at https://www.isba.org/sites/default/files/Media%20Law%20Handbook%20Chapter%2012%20-

%20Right%20to%20Privacy.pdf

99. Defendants' conduct causing, controlling and arbitrarily altering Adams' life and business affairs

of Majestic Publishers in the deprivation of privileges, immunities, and fundamental rights to be

free from an invasion into our most private moments conflicts with the *"Right to Privacy"* as

that term is understood in Illinois at the time of the offense

*Eleventh Cause of Action*

**Tort of Civil Conspiracy**

100.    Plaintiffs re-allege the defendants' conduct enumerated herein displays a civil conspiracy

with pendant jurisdiction

101.    The defendants acting individually and collectively in their official and personal

capacity under color of law to intentionally deprive Adams of privileges and immunities had a

custom, system or policy of;

1) engaging in a civil conspiracy with federal authorities to secretly deprive Adams of inherent

rights satisfy the four required elements of a civil conspiracy; "*1) an agreement between two or

more persons ...*" the city and county defendants plotted with federal authorities to engage in

unlawful warrantless electronic surveillance and possibly physical search with probable faulty

warrants, "*2) to participate in an unlawful act, or a lawful act in an unlawful manner ...*" failing

to honor court orders, serve warrants, contrary to their own policy or statutes, "*3) an injury

caused by an unlawful overt act performed by one of the parties; and ...*" it appears the overt act

was the Illinois defendants delaying justice until other parties could jointly ensnare Adams

under the "*foreign affairs*" nightmare to eliminate judicial review and the unconscionable

conduct that naturally comes with that indomitable designation "*4) the overt act was done

pursuant to and in furtherance of the common scheme ...*" had the defendants complied with the

law and detained Adams there may not have been a foreign affairs issue but the defendants still

have a non detention policy for Adams because the harm they caused to Adams can not be

reversed without the courts aid, satisfying the elements of, "*Wolf v. Liberis (1987), 153 Ill. App. 3d 488, 496, 106 Ill. Dec. 411, 417, 505 N.E. 2d 1202, 1208*"

Court Listener Staff, Michael McCuskey, (July 22, 1992), "Vance v. Chandler, 597 N.E. 2d 233 (Ill. App Ct. 1992)" Appellate Court of Illinois, Third District. CourtListener.com. Free Law Project. Publicly available at https://courtlistener.com/opinion/2067369/vance-v-chandler/

102.    Defendants' conduct causing, controlling and arbitrarily altering Adams' life, dreams and business affairs of Majestic Publishers in the deprivation of privileges, immunities and fundamental rights may offend the tort of civil conspiracy common law and Constitutional issues cited above offering plaintiffs' a remedy and relief as a matter of law and equity

VII. REQUESTED RELIEF

A) expedite service of process

B) hear the facts and the law of this complaint

C) appoint legal counsel for these intricate matters

D) issue a preliminary injunction to halt unlawful harm during this proceeding

E) grant a declaratory order holding defendants conduct as unlawful

F) award appropriate compensatory damages for the ongoing harm of over $100,000.00

G) agree punitive damages are appropriate to deter future miscarriages of justice

H) such other relief as the court deems just

Respectfully submitted,

Signed on this 26th day of December, 2018.

Dale B. Adams
Majestic Publishers
2313 Anvil Drive
Harrison, AR. 72601
T: (870) 365-7334